# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MARK R. KNECE,

      Plaintiff,

                                    Civil Action 2:17-cv-1130

      v.                         Judge Algenon L. Marbley
                                    Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Mark R. Knece, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Social Security Disability Insurance Benefits and Supplemental Security Income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition (ECF No. 25), and the administrative record (ECF No. 9). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

# I. BACKGROUND

Plaintiff protectively filed his applications for benefits in March 2011, alleging that he has been disabled since February 15, 2011, due to back pain and depression. (R. at 779.) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Paul E. Yerian (the "ALJ") held a hearing on September 13, 2012. On October 26, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 89–102.) Plaintiff timely filed an action in this Court for review. On September 3, 2015, this Court remanded the case and ordered a more detailed explanation in weighing the opinions of Plaintiff's treating physician, Donald Fouts, D.O. (R. at 888-914; *see also Knece v. Comm'r Soc. Sec.*, Case No. 14-cv-353, Report and Recommendation (ECF No. 20); adopted and affirmed, Order (ECF No. 21.))

On remand, the same ALJ held a hearing in November 2016 at which Plaintiff, who was represented by counsel, testified. A vocational expert, Richard Oestreich, (the "VE") also testified. On January 24, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 776-800.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 769-75.) Plaintiff then timely commenced this action.

## II. TREATING PHYSICIAN'S OPINIONS

Plaintiff puts forth one assignment of error. Specifically, Plaintiff maintains that the ALJ, on remand with express instructions to provide a more detailed explanation in weighing the opinions of Plaintiff's treating physician, Dr. Fouts, again erred in assigning only "little weight" to his opinions.

On April 18, 2011, Dr. Fouts reported that he had been treating Plaintiff since February 2007.[1] Dr. Fouts listed Plaintiff's diagnoses as back pain, lumbar spondylolisthesis, lumbar spondylosis, and depression. (R. at 755.) Dr. Fouts reported that Plaintiff's pain and depression continued despite treatment. (*Id*.) He further noted that Plaintiff has lower back paraspinal tenderness, increased pain with range of motion and flexion and extension; decreased range of motion; depressed mood; decreased interest; decreased hope; and poor outlook. (R. at 756.) Dr. Fouts noted that Plaintiff has trouble affording medication due to lack of insurance.

On April 25, 2011, Dr. Fouts opined that due to pain and decreased range of motion, Plaintiff is severely limited in his ability to work and has a limited ability to perform activities such as sitting, driving, lifting, carrying, stooping, kneeling, bending, walking for extended periods, and standing for extended periods. Dr. Fouts further opined that Plaintiff's depression limits his ability to think clearly, concentrate, and interact with others. Dr. Fouts noted that Plaintiff's depression creates a decreased interest in personal hygiene. (R. at 507-508.) He opined that Plaintiff was unable to lift, carry, stoop, kneel, bend, walk for extended periods, or stand for extended period. (R. at 508.)

The record contains Dr. Fouts' treatment notes from May 19, 2011 until February 6, 2012. Examinations during this time generally revealed intact gait, bilateral lower paraspinal muscle tenderness, reduced lumbar flexion, and reduced lumbar extension. (R. at 673, 677, 679, 682, 686-689, 700, 703, 708, 732.) Dr. Fouts noted that Plaintiff had decreased sensation in the

---

[1]Because the Court has already set out a detailed description of Plaintiff's medical records in Case No. 14-cv-353 and because Plaintiff's sole assignment of error relates to the ALJ's analysis of Plaintiff's treating physician, the Undersigned focuses the discussion on Dr. Fouts' treatment records and opinions. The Undersigned will discuss the relevant facts and other medical records in the course of analyzing Plaintiff's arguments.

right anterior lateral thigh to touch; deep tendon reflexes of 3+/4+ bilaterally in the patella and 3+/4+ bilaterally in the achilles; negative straight leg raise bilaterally; positive straight leg raise at 30 degrees on the right on two occasions; decreased range of motion; tender lateral left ankle and reduced left knee flexion; and joint line tenderness. Dr. Fouts also frequently noted that Plaintiff appeared depressed.

On February 6, 2012, Dr. Fouts completed a Physical Capacity Evaluation on behalf of Plaintiff. He opined that Plaintiff could occasionally lift 5 pounds, and that he could not lift any weight frequently. Dr. Fouts found that Plaintiff could stand and walk less than 30 minutes in an 8-hour workday, and could sit less than 30 minutes in an 8-hour workday. Dr. Fouts noted that Plaintiff could sit 10 to 15 minutes before needing to stand, and could stand 10 to 15 minutes before needing to sit. Dr. Fouts also opined that Plaintiff must lie down 2-4 times in an 8-hour workday. Plaintiff could never twist, stoop, bend, crouch, or climb ladders, and could occasionally climb stairs. Plaintiff could never perform pushing or pulling, could occasionally perform reaching, and could frequently perform handling, fingering, and feeling. Dr. Fouts further opined that Plaintiff needed to avoid even moderate exposure to wetness because he is a fall risk. Dr. Fouts opined that Plaintiff must avoid all exposure to hazards. He also noted that Plaintiff's depression creates problems with his ability to respond appropriately to supervisors, co-workers, and to changes in a routine work setting. Dr. Fouts concluded that Plaintiff could work 0-3 days per week and less than 3 consecutive weeks per month. (R. at 711-13.)

On February 8, 2012, Dr. Fouts prepared a narrative in which he reported that he treated Plaintiff on a regular basis for pain management both prior and following surgery.[2] He opined

---

[2] Plaintiff testified during the second hearing before the ALJ that Dr. Fouts prescribed opioid pain medication to him for years. (R. at 863.) He indicated that after he stopped seeing

that Plaintiff is severely limited due to his pain and has been unable to work. He further opined that Plaintiff could not sit for more than 1 to 2 hours at a time. He also noted that Plaintiff has increased pain with activities that require standing for extended periods of time, including doing dishes, laundry, or mowing grass. Dr. Fouts also submitted that Plaintiff suffers from depression, with suicidal ideation. Dr. Fouts opined that Plaintiff likely will not obtain significant pain relief from additional surgical procedures. He concluded that Plaintiff is permanently and totally disabled due to chronic lower back pain and believes Plaintiff is going to require long term pain management in the future. (R. at 715-16.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

---

Dr. Fouts—Plaintiff believes Dr. Fouts terminated him from the practice because he owed money—he discovered that, although he never abused the medication, he was dependent on and addicted to opioids. Plaintiff began searching for pain pills on his own and at some point started using heroin for short period. (R. at 864-65.) He was able to stop using heroin when he started taking Suboxone and was still on Suboxone at the time of the hearing. (R. at 865.)

5

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff asks the Court to reverse the ALJ's nondisability finding because the ALJ again failed to appropriately weigh and analyze Dr. Fouts' opinions. The Undersigned disagrees.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique prospective to the medical evidence

that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. Apr. 28, 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician

7

rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

In the ALJ's first decision, his discussion of Dr. Fouts' opinions was limited:

Dr. Fouts has submitted three medical source statements, all of which would support a finding of disability. Dr. Fouts appears to qualify as a treating source within the meaning of the regulations, as there is a treatment relationship dating back to 2007 (Exhibit 19F). The regulations further provide that a treating source opinion is entitled to controlling weight where it is well supported by and not inconsistent with objective clinical and laboratory findings.

I do not assign controlling weight to any of these statements. First, I note that Dr. Fouts is a primary care physician and is not a specialist in occupational medicine, physical medicine or rehabilitation or in orthopedics or neurology. The absence of any specialized training is a factor to be considered in determining weight of medical source opinions.

Rather, [] very little weight is given to the opinions dated February 6, 2012 (Exhibit 35F) and February 8, 2012 (Exhibit 36F), as these opinions (i.e. sitting, standing, and walking less than four hours and having to lie down up to four hours in an eight-hour day) are more restrictive than the totality of the medical evidence suggests. Such a conclusion is inconsistent with his own treatment notes at Exhibits 34F and 37F. Further, the final responsibility to determine whether a [Plaintiff] is "disabled" or "unable to work" is reserved for the Commissioner pursuant to 20 CFR 404.1527(e) and 416.927(e). For these reasons I also assign little weight to the conclusory statements dated April 25, 2011 (Exhibit 19F p. 2), as the opinion is inconsistent with the totality of the medical evidence of the record and other

8

credible medical opinions as noted herein. Moreover, the doctor failed to provide a function-by-function analysis that specified specific abilities.

(R. at 95-96.)

The Court found this discussion inadequate. Specifically, the Court found as follows:

A review of the ALJ's discussion of the objective evidence demonstrates that the ALJ failed to consider the entire record in assessing whether Dr. Fouts' opinions were entitled to controlling weight. Rather than focusing on the signs and symptoms that Plaintiff exhibited upon medical examination, the ALJ points to all the signs and symptoms that were not present. In doing so, the ALJ attempts to use the purported lack of evidence to conclude that Plaintiff is not credible and that Dr. Fouts' opinions are inconsistent with the objective evidence in the record. In doing so, however, the ALJ misstated some important evidence and improperly failed to consider other evidence.

(R. at 911.)

By comparison, the ALJ provided the following reasoning for assigning only "little weight" to Dr. Fouts' opinions after the second hearing. After thoroughly summarizing the clinical and laboratory findings, as well as noting Plaintiff's daily activities of living extensively, the ALJ concluded as follows:

I give little weight to the opinions, as they are more restrictive than the totality of the medical evidence suggests, though I do acknowledge that the claimant is limited to sedentary work. I also give little weight to his assessment that the claimant could not lift, carry, stoop, kneel, bend, walk for extended periods, or stand for an extended period. Final responsibility to determine whether a claimant is "disabled" or "unable to work" is reserved for the Commissioner pursuant to 20 CFR 404.1527(e) and 416.927(e). Dr. Fouts is a treating source within the meaning of the regulations, as there is a treatment relationship dating back to 2007. The regulations further provide that a treating source opinion is entitled to controlling weight where it is well supported by and not inconsistent with objective clinical and laboratory findings. I do not assign controlling weight to any of Dr. Fouts' statements, as I do not find that [they] are well supported by or consistent with the above-summarized clinical and laboratory findings. While the summarized record documents some findings on examinations, such as positive [straight leg raises] results and an antalgic gait, such findings have been inconsistent, and the record generally documents a normal gait, an ability to ambulate without assistance, and the absence of neurological deficits. Additionally, the claimant's subjective reports have been inconsistent with objective findings and/or other reports and

observations. There was relatively little treatment in 2012, and, in December 2012, he sought treatment for a one-day history of headache but denied joint pain, back pain, neck pain, numbness, tingling, and weakness. Elsewhere, he also denied back tenderness, and he had no motor or sensory deficits. An April 2014 treatment note indicated that he was exercising, changing his diet, and going on walks two to three times a week, and he was ambulatory without assistance. In July 2014, he appeared comfortable when seated but grimaced when he stood and walked, though he was able to walk without assistance. In February 2015, he fell while walking up steps to a mobile home but had no significant discomfort until later, and he did not want his right knee x-rayed. He was neurovascularly intact. In March 2015, he reported chronic knee pain, though he denied inability to bear weight, numbness, tingling, neck pain, back pain, myalgias, extremity pain, and extremity swelling. In November 2015, he reported left knee pain but was in no acute distress. A December 2015 postsurgical treatment note revealed that he safely moved about the community, had not fallen in the last six months, and had normal, unassisted walking and striding without hesitation. More recently, in June 2016, he reported continued back pain with radiation to his groin and numbness to his legs and reportedly had gotten a wheelchair, but he had a normal gait and station on examination with no neurological deficits. In July 2016, he presented with low back pain a level of 5 on a 10-point scale and had some positive findings on examination, but was ambulatory without assistance. September 2016 electrodiagnostic testing revealed no evidence of any focal neuropathy or radiculopathy. I also note that the claimant's alleged intensity and frequency of symptoms, as reported to Dr. Fouts, were inconsistent with the claimant's activities of daily living, as summarized throughout this decision. For all these reasons, I give Dr. Fout's opinions little weight.

(R. at 792-93.)

As set forth above, in April 2011, Dr. Fouts opined that Plaintiff's pain and reduced range of motion severely limited in his ability to work; he had pain with limited activity such as sitting/driving; and was unable to lift, carry, stoop, kneel, bend, or walk or stand for an extended period. (R. at 508.)

On February 6, 2012, Dr. Fouts completed a "Physical Capacity Evaluation" in which he opined that Plaintiff could occasionally lift and carry five pounds, stand/walk less than thirty minutes, sit less than thirty minutes, and needed to alternate sitting/standing every ten to fifteen minutes and lie down two to four times in an eight-hour work day. (R. at 711.) Dr. Fouts also

10

opined that Plaintiff could occasionally climb stairs; never twist, stoop/bend, crouch, and climb ladders; never push/pull; occasional reach; and frequently handle, finger, and feel. (R. at 712-13.) Dr. Fouts further opined that Plaintiff could only perform the above activities on a sustained basis up to three days per week and less than three consecutive weeks per month. (R. at 713.)

On February 8, 2012, Dr. Fouts opined that Plaintiff was unable to work due to chronic and severe pain, and was unable to sit for more than one to two hours due to worsening of pain. (R. at 716.) Dr. Fouts further opined that Plaintiff was "permanently and totally disabled due to chronic lower back pain." (*Id*.)

As an initial matter, the ALJ reasonably rejected Dr. Fouts' conclusions that Plaintiff is disabled and unable to work because such determinations are specifically reserved to the Commissioner. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating source's opinion that the claimant was disabled because such a determination was reserved to the Commissioner). This opinion "is not a medial opinion requiring consideration." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

Nevertheless, Plaintiff contends that the ALJ's reasoning was "predominantly focused on an assertion that the physical examinations of record do not support the limitation assessed by Dr. Fouts because of normal findings on exam, even though there are some abnormal findings on exam." (Pl's Brief at p. 27.) He maintains that the reasoning employed by the ALJ "is very similar to the reasoning in his first decision . . . ." (*Id*.)

The Undersigned finds that the ALJ complied with the necessary procedural requirements in determining how much weight to assign the medical opinions. The ALJ provided specific reasons for assigning less weight to Dr. Fouts' assessments. First, the ALJ noted that Dr. Fouts' assessment was not fully supported by his own treatment records and with the record as a whole.

These are good reasons to discount a treating physician's opinion. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (concluding that an ALJ's assessment that a treating physician's conclusions were "not well supported by the overall evidence of record and [were] inconsistent with other medical evidence of record" was a "specific reason for not affording controlling weight" to the treating physician); *see also* 20 C.F.R. § 404.1527(c)(3) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ did not, as Plaintiff complains, discount Dr. Fouts' opinions by focusing on Plaintiff's intermittent normal exam findings and dismissing his abnormal findings. Rather, the ALJ expressly considered both Plaintiff's abnormal medical findings and normal findings in giving Dr. Fouts' opinions "little weight." The ALJ summarized the record and noted some abnormal exam findings, such as positive straight leg raise-test results with an antalgic gait. The ALJ, however, concluded that these abnormal findings had been inconsistent and the record generally documented a normal gait, an ability to ambulate without assistance, and the absence of neurological deficits. (R. at 793.) The ALJ included a lengthy and thorough discussion of the record evidence, including the objective medical findings. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). Substantial evidence supports this conclusion.

For instance, as the ALJ noted, in July 2014, Plaintiff appeared comfortable when seated, but grimaced when he stood and walked, although he was able to walk without assistance. (R. at 1285.) The ALJ acknowledged that Plaintiff fell while walking up the stairs of a mobile home in February 2015, but noted Plaintiff had no significant discomfort until later, he did not want his right knee x-rayed, and he was neurologically intact. (R. at 1440-41.) Plaintiff reported chronic

knee pain in March 2015, but denied that he was unable to bear weight or had numbness, tingling, neck pain, back pain, myalgias, extremity pain or extremity swelling. (R. at 1431.) The ALJ thoroughly documented and the record confirms other inconsistencies such as a November 2015 report of left knee pain, but Plaintiff was in no acute distress (R. at 1958) and a December 2015 post-surgical treatment note indicating that he moved safely, had not fallen in the last six months, and had normal unassisted walking, and striding without hesitation. (R. at 1939.)

Substantial evidence also supports the ALJ's conclusions that Plaintiff's subjective reports had been inconsistent with other objective findings and observations and that during the relevant period he had at times decline and not sought significant treatment. The ALJ noted that Plaintiff managed his pain conservatively since his initial surgery, and that he initially declined pain management and no further lumbar spine surgery had been recommended. (R. at 789.) Plaintiff also initially did not participate in physical therapy, occupational therapy, or other rehabilitative therapy. (R. at 613-14, 700, 736, 739.) Plaintiff often declined further medical treatment, including referral to the OSU spinal clinic and pain management. In June 2016, Plaintiff reported continued back pain with radiation to his groin and numbness to his legs and reportedly had a wheelchair, but he had a normal gait and station on examination with no neurological defects. (R. at 2377, 2379.) In July 2016, Plaintiff presented with low back pain at a level of 5 on a 10-point scale and some positive exam findings, but he was ambulatory without assistance. (R. at 2354-56.) In September 2016, Plaintiff's EMG testing revealed no evidence of any focal neuropathy or radiculopathy. (R. at 2388.) Plaintiff received relatively little treatment in 2012. Plaintiff sought treatment for a one-day history of headache on December 9, 2012, but at that time denied joint pain, back pain, neck pain, numbness, tingling, and weakness. (R. at 1219.) On December 13, 2012, Plaintiff denied back tenderness and had no motor or

sensory deficits. (R. at 1798.) Dr. Fouts' opinion that Plaintiff was severely impaired and incapable of working is inconsistent with all of this record evidence. The ALJ properly discounted Dr. Fouts' opinion for these reasons. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period.")

The ALJ also found that Plaintiff's alleged intensity and frequency of symptoms, as he described to Dr. Fouts, were inconsistent with Plaintiff's activities of daily living. The Undersigned concludes that ALJ reasonably considered the record evidence reflecting Plaintiff's activities of daily living. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). The evidence supports this conclusion. For instance, treatment notes in April 2014 indicated that Plaintiff was exercising and going on walks two to three times a week. (R. at 1281.) Plaintiff indicated in his April 2011 function report that he lived alone in a mobile home, tried to exercise and stretch, prepared simple meals once a day, went outside once a day, drove a car, and played guitar maybe twice a week. (R. at 318-28.) By November 2014, Plaintiff was living in a house with family, engaged in physical therapy, attended medical appointments, drove a car, grocery shopped once a month with his father's assistance, and attended church a few times a month.

During the second hearing before the ALJ in November 2016, Plaintiff testified that he showered using a shower chair, cleaned his bed if he wet it, dressed but with his mother's

assistance, and stretched. (R. at 785.) However, also in November 2016, treatment notes indicated that Plaintiff reported that he had no limitation with respect to feeding himself and only a little limitation with respect to lifting and carrying groceries, bathing, dressing, and getting out of a chair. (R. at 2468.)[3] While Plaintiff reported some limitations in his activities of daily living, the ALJ reasonably found that his alleged intensity and frequency of symptoms as he reported to Dr. Fouts were inconsistent with his daily activities. Under these circumstances, the ALJ properly considered the medical record and other evidence, including Plaintiff's activities of daily living, in discrediting the Dr. Fouts' opinions. *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (discounting opinions of treating source that conflicted with other treatment records and evidence that the plaintiff could perform significant daily activities); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 809 (6th Cir. 2012) (discounting opinions of treating source that conflicted with the claimant's own testimony regarding her abilities); *Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 780 (E.D. Mich., 2019) ("An ALJ may properly consider a claimant's ability to perform daily activities, as well as a claimant's testimony regarding his abilities, in discounting the opinions of a treating source.")

Plaintiff insists that the ALJ committed the same error in evaluating Dr. Fouts' opinion in this case that he made after the first hearing. Specifically, Plaintiff argues that the ALJ's reasoning in discounting Dr. Fouts here was "very similar to his first decision" and focused on

---

[3] Plaintiff did indicate that he had "a lot" of limitation with respect to running, lifting heavy objects, climbing stairs, bending, kneeling, stooping, and walking one block or mile. (R. at 2468.) The ALJ acknowledged these more significant limitations but nevertheless found that the record did not contain evidence of abnormal clinical and laboratory findings sufficient to document such restrictive loss of function. (R. at 791.)

intermittent normal physical findings and ignored abnormal findings without explanation. The Undersigned disagrees.

The ALJ's evaluation of Dr. Fouts' opinions on remand was thorough and addressed this Court's remand order. (R. at 906-14.) Contrary to Plaintiff's argument, the ALJ's decision is not at all similar to his prior decision and does not focus solely on Plaintiff's normal exam findings. The ALJ's evaluation of Dr. Fouts' opinions in his second decision is significantly more thorough and detailed than his prior decision. The ALJ conducted a detailed analysis of all the medical evidence and considered Plaintiff's activities of daily living throughout his decision.

The ALJ did not, as Plaintiff contends, discount Dr. Fouts' medical opinions based on intermittent normal findings. He did not ignore or dismiss abnormal exam findings. Rather, throughout his decision the ALJ noted several instances of medical record showing abnormal findings. The ALJ, however, assessed the entire record as a whole and reasonably concluded that Dr. Fouts' opinion was inconsistent with it. He was entitled to do so. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion".); 20 C.F.R. § 404.1527(c)(2) (listing factors to be applied when a treating-source opinion is not given controlling weight, including the general consistency of the opinion with the record as a whole); *Gayheart v. Commissioner of Social Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (same).

Instead, the ALJ expressly acknowledged records with abnormal findings. The ALJ's robust description of all the medical record, including abnormal findings, indicates that he adequately considered the medical record as a whole in evaluating Dr. Fouts' opinions. (R. at 788-91, 793.) The ALJ expressly acknowledged treatment notes showing reduced range of motion of the lumbar spine, low back pain, lower extremity weakness, muscle tenderness, and

reduced range of motion, grimacing when standing in July 2014, and positive straight leg raising with an antalgic gait. (*Id.*) Reading the ALJ's entire decision as a whole, however, he also noted treatment records showing that Plaintiff generally had a normal gait, an ability to ambulate without assistance, no motor or sensory deficits, and declined further treatment or did not participate in recommended physical therapy. Plaintiff also at times denied joint pain, back pain, back tenderness, neck pain, numbness, tingling, and weakness. (R. at 789, citing R. at 1219, 1431, 1798).

The ALJ properly found that while Plaintiff had some physical limitations, substantial evidence in the record does not support that Plaintiff was disabled or as limited as Dr. Fouts opined. To the extent Plaintiff objects because the ALJ did not highlight other specific records, the ALJ was not required to discuss every single piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citations and quotations omitted); *cf. Tilley v. Comm'r of Soc. Sec.*, No. 09 6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

In sum, substantial evidence supports the ALJ's decision discounting Dr. Fouts' opinions that Plaintiff was unable to work, or unable to lift, carry, stoop, kneel, bend, or walk and stand for an extended period. The Undersigned finds that the ALJ sufficiently cured any inadequacies

in this discussion of the weight he assigned to Plaintiff's treating physician, Dr. Fouts, in the second hearing.

## V. CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 12, 2019                              /s/ *Elizabeth A. Preston Deavers*
                                                 Elizabeth A. Preston Deavers
                                                 Chief United States Magistrate Judge